**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED TALENT AGENCY, LLC, a Delaware limited liability company, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> MARKEL AMERICAN INSURANCE COMPANY, a Virginia company, <br><br> Defendant-Appellee, <br><br> and <br><br> DOES, 1 through 10, <br><br> Defendant. | No.  22-55205 <br><br> DC No. 2:21-cv-00369-MCS <br><br><br> MEMORANDUM* |
| UNITED TALENT AGENCY, LLC, a Delaware limited liability company, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> MARKEL AMERICAN INSURANCE COMPANY, a Virginia company, | No.  22-55357 <br><br> DC No. 2:21-cv-00369-MCS |

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Defendant-Appellant,

and

DOES, 1 through 10,

Defendant.

Appeals from the United States District Court
for the Central District of California
Mark C. Scarsi, District Judge, Presiding

Argued and Submitted February 13, 2023
Pasadena, California

Before: TASHIMA, HURWITZ, and BADE, Circuit Judges.

Markel American Insurance Company ("Markel") issued a management liability policy to United Talent Agency ("UTA"). UTA was sued by a competitor, Creative Artists Agency ("CAA"), for allegedly stealing its clients and employees. Markel declined coverage for the action, based on the policy's professional liability exclusion and California Insurance Code § 533, which provides that "[a]n insurer is not liable for a loss caused by the wilful act of the insured." UTA sued Markel for breach of contract and bad faith. The district court held that § 533 did not apply, but concluded that coverage was precluded by the policy's professional liability exclusion, and entered judgment in favor of Markel. We have jurisdiction

2

under 28 U.S.C. § 1291 and conclude that the professional liability exclusion does not apply, but that § 533 does.  We therefore reverse and remand.

**1.**	We disagree with the district court's conclusion that CAA's allegations that UTA illegally stole clients and agents from CAA come within the purview of the policy's professional liability exclusion.[1]  The exclusion disclaims liability for any loss "based upon, arising out of, or in any way involving any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty in connection with the rendering or failure to render any professional services to others for a fee, commission or other compensation."  The allegations by CAA that UTA stole clients and agents from CAA do not involve conduct in connection with the rendering of professional services to others for a fee.  Rather, UTA represents clients in the negotiation of contracts for fees.  Even if UTA's only possible motive could have been to increase profits, as the district court found, this does not bring the conduct within the meaning of rendering professional services.  Everything that UTA does can be described as motivated by increasing profits.

---

[1]	Because the parties are familiar with the factual and procedural background, we do not set it forth except as necessary to understand this disposition.

**2.** The district court erred in relying on an exclusion in the policy for a claim "involving any deliberately fraudulent act or omission or any willful violation of any statute or regulation," to conclude that § 533 did not apply. The court reasoned that because the exclusion required "a final and non-appealable adjudication" to establish such an act and Markel had not provided "any final and non-appealable judgment demonstrating a willful act," Markel could invoke neither the exclusion nor § 533. However, application of § 533 is a matter of statutory construction, not of contract interpretation.

Section 533 "reflects a fundamental public policy of denying coverage for willful wrongs and discouraging willful torts." *Certain Underwriters at Lloyd's London v. ConAgra Grocery Prods. Co.*, 292 Cal. Rptr. 3d 712, 719–20 (Ct. App. 2022); *see also Cal. Amplifier, Inc. v. RLI Ins. Co.*, 113 Cal. Rptr. 2d 915, 926 (Ct. App. 2001) ("Liability arising from intentional and inherently or predictably harmful conduct cannot be covered by liability insurance."). "Because the exclusion embodied in section 533 is a statute, the normal rules of contract interpretation do not apply. Rather, the rules of statutory construction control." *Downey Venture v. LMI Ins. Co.*, 78 Cal. Rptr. 2d 142, 154 n.32 (Ct. App. 1998). Thus, any ambiguities are not construed against the insurer. Instead, the statutory language is construed "so as to effectuate the legislative purpose and intent. . . .

4

[T]hat legislative purpose is both clear and unequivocal. It is to deny insurance coverage for wilful wrongs." *Id.*

Section 533's application therefore does not depend on the policy's exclusion for a "deliberately fraudulent act or omission or any willful violation of any statute or regulation." Rather, "[s]ection 533 creates a statutory exclusion which is read into every insurance policy." *Marie Y. v. Gen. Star Indem. Co.*, 2 Cal. Rptr. 3d 135, 153 (Ct. App. 2003). The policy's requirement of a judgment establishing a wilful act for the exclusion to apply is not pertinent to the § 533 analysis.

A wilful act for purposes of § 533 means "either 'an act deliberately done for the *express purpose* of causing damage or intentionally performed with *knowledge* that damage is highly probable or substantially certain to result.'" *Downey*, 78 Cal. Rptr. 2d at 155 (quoting *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 15 Cal. Rptr. 2d 815, 832 (Ct. App. 1993)). A wilful act also "includes an intentional and wrongful act in which 'the harm is inherent in the act itself.'" *Id.* (quoting *J.C. Penney Cas. Ins. Co. v. M.K.*, 804 P.2d 689, 698 (Cal. 1991)).

California courts have found that § 533 precludes coverage of litigation when the allegations of the underlying complaint can be established only by showing wilful misconduct. *See, e.g., Marie Y.*, 2 Cal. Rptr. 3d at 153–54 (because

5

"sexually molesting a dental patient after rendering her unable to resist by giving her nitrous oxide is a 'wilful act' under section 533," and "this is the precise conduct originally alleged against [the insured], the original complaint on its face demonstrates that section 533 bars coverage for his conduct"); *Downey*, 78 Cal. Rptr. 2d at 157–59 (where underlying action for malicious prosecution against the insured was settled, examining elements of malicious prosecution and holding that § 533 precluded indemnification because "the commission of this tort constitutes a wilful act within the meaning of section 533"); *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 18 Cal. Rptr. 2d 692, 695, 697 (Ct. App. 1993) (where underlying action for sexual harassment and wrongful termination was settled, the court reviewed the allegations of the complaint and held that coverage for the costs of defending and settling the claim was barred by the policy and by section 533 because there was "no credible argument that this alleged wrongful conduct could be anything other than intentional and willful"); *B & E Convalescent Ctr. v. State Comp. Ins. Fund*, 9 Cal. Rptr. 2d 894, 897 (Ct. App. 1992) (where underlying action for wrongful termination was settled, examining the allegations of the underlying action and holding that, "[a]s the employee's claims in the underlying action against the insured employer consist solely of willful misconduct involving the intentional termination of the employee in violation of fundamental and

6

substantial public policies, . . . there is no potential for coverage under the employer's liability policy because Insurance Code section 533 precludes any duty to indemnify").

Thus the court's task is to examine the allegations in the underlying complaint to determine whether those allegations necessarily involve a wilful act within the meaning of § 533. The district court did not do so here. We therefore remand for the district court to make this determination in the first instance.

In light of our remand, we decline to consider the parties' other contentions on appeal. We reverse the grant of Markel's summary judgment motion on the professional liability exclusion, reverse the denial of Markel's summary judgment motion as to § 533, and remand for the district court to make the appropriate determination on Markel's summary judgment motion as to the application of § 533. Markel is awarded its costs on appeal.

**REVERSED and REMANDED.**